# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDA G.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL, Commissioner of Social Security,[2] <br><br> Defendant. | Case No. 5:18-cv-00694-AFM <br><br> **MEMORANDUM OPINION AND ORDER REVERSING AND REMANDING DECISION OF COMMISSIONER** |

Plaintiff, Freda G., filed this action seeking review of the Commissioner's final decision denying her application for supplemental security income benefits. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. The matter is now ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Andrew Saul is now the Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

## BACKGROUND

On December 17, 2013, Plaintiff applied for supplemental security income benefits, alleging disability beginning April 9, 2011. Plaintiff's application was denied initially and on reconsideration. (Administrative Record ["AR"] 60-69, 71-80.) A hearing took place on July 22, 2016 before an Administrative Law Judge ("ALJ"). Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing. (AR 32-59.)

In a decision dated February 10, 2017, the ALJ found that Plaintiff suffered from the severe impairments of insulin dependent diabetes mellitus, bilateral carpal tunnel syndrome, depression, bipolar affective disorder, anxiety, obesity, hypertension, diabetic peripheral neuropathy, hypothyroidism, and a history of substance abuse disorder and alcohol dependence with a methamphetamine psychosis. (AR 17.) The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of light work. As relevant to Plaintiff's claims, the ALJ found Plaintiff was limited to frequent fine and gross manipulation bilaterally, was precluded from working around moving machinery or other hazards; and was precluded from forceful gripping or grasping bilaterally. (AR 17.) Relying upon the testimony of the VE, the ALJ found that Plaintiff was capable of performing work existing in significant numbers in the national economy. Accordingly, the ALJ concluded that Plaintiff was not disabled. (AR 26.)

The Appeals Council subsequently denied Plaintiff's request for review (AR 1-6), rendering the ALJ's decision the final decision of the Commissioner.

## DISPUTED ISSUES

1. Whether the ALJ properly assessed Plaintiff's RFC with respect to her upper extremity impairments or was obligated to develop the record with regard to those impairments.
2. Whether the ALJ failed to resolve a conflict between the VE's testimony and the DOT.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

**DISCUSSION**

**1. The ALJ's RFC Assessment.**

Plaintiff contends that the ALJ erroneously assessed her RFC. According to Plaintiff, the ALJ failed to properly consider the pertinent medical evidence regarding her upper extremity impairments and failed to satisfy her obligation to develop the record regarding those impairments. (ECF No. 22 at 3-5.)

**A. Relevant Evidence.[3]**

On April 24, 2014, Michael S. Gurvey, M.D., performed a consultative orthopedic examination of Plaintiff. (AR 466-472.) With regard to Plaintiff's upper extremities, Dr. Gurvey found no swelling, effusion, erythema, warmth or deformity. Dr. Gurvey noted full range of motion of Plaintiff's left elbow and wrist, and also noted that digital extension and flexion against resistance caused no forearm

---

[3] Because Plaintiff's challenge is limited to the ALJ's consideration of the evidence related to her upper extremity impairments, the Court limits its summary of the evidence to the same.

discomfort. However, Plaintiff had "subjective discomfort with deep palpation over the entire forearm toward the mobile mass of the elbow." (AR 469.) Examination of Plaintiff's hands was clinically within normal limits, with no deformity or evidence joint swelling or synovitis. Dr. Gurvey reported that Plaintiff had "full function of both hands," with no evidence of atrophy. Her peripheral vascular status and sensation were normal. (AR 470.) Plaintiff's motor examination revealed essentially normal strength in all major muscle groups of the upper and lower extremities, "graded at 5/5." (AR 470.) Plaintiff's grip strength was measured as 40, 50, 50 pounds in the right hand and 20, 20, 20 pounds in the left hand, which Dr. Gurvey concluded was commensurate with motor strength. (AR 470.)

In the section of his report reserved for his "diagnostic impression," Dr. Gurvey stated that Plaintiff's "bilateral hand discomfort" had no etiology. Instead, Plaintiff's examination was essentially within normal limits, and Dr. Gurvey was unable to detect any evidence of underlying significant arthropathy. He allowed that Plaintiff's symptoms could be secondary to her diabetes. (AR 470.) In Dr. Gurvey's opinion, Plaintiff had no limitations in her ability to perform gross manipulation, fine manipulation, or feeling. (AR 471-472.)

Medical records from 2015 and 2016 contain reports of pain and numbness in Plaintiff's hands and wrists and diagnoses of carpal tunnel syndrome and diabetic polyneuropathy. Examination in July 2015 revealed clinical findings such as decreased grip; positive numbness, tingling in digits 1-3 bilaterally, and positive Phalen's and Tinel's sign. A February 2016 examination also revealed positive Tinel's and Phalen's signs in both wrists. (*See* AR 515-516, 520, 526, 528, 533, 540.) EMG and nerve conduction testing performed in March 2016 disclosed severe bilateral median neuropathy at the wrist. (AR 555.)

Finally, at the hearing, Plaintiff testified that she suffers from numbness and pain in her hands. The tips of her fingers are numb, and the pain is constant. According to Plaintiff, she is unable to holding a pen or a cellphone. Physical therapy

did not help, and Plaintiff's physician recommended surgery. Plaintiff further testified that she worked braiding hair in 2014. She explained that an individual's hair could take six to eight hours to braid. Plaintiff estimated that she braided "two heads" a month. (AR 39-40, 43, 51-52; *see also* AR 532.)[4]

**B. The ALJ's Decision.**

The ALJ discussed the foregoing evidence as well as the medical opinion evidence. The ALJ gave little weight to Dr. Gurvey's opinion that Plaintiff had no functional limitations. As the ALJ explained, Dr. Gurvey's opinion was based upon "a one-time examination of [Plaintiff], with the opportunity to review only a limited amount, if any, of the medical records which when viewed in their entirety support a more restrictive functional capacity." (AR 22.)

The ALJ also gave little weight to the opinions of the State agency physicians, who found that Plaintiff suffered from no severe physical impairment. The ALJ explained that the State agency physicians – who rendered their decisions in April and September 2014 – "did not have the benefit of considering the additional evidence that was available only after the reconsideration determination." (AR 22.)

The ALJ concluded that:

> While the record confirms bilateral carpal tunnel, [Plaintiff's] allegations with respect to the use of her hands such as being unable to hold onto a phone are inconsistent with the examination findings as to the lack of any muscle atrophy, intact sensory and vascular status, and normal muscle strength. While complaints of bilateral wrist pain and chronic finger numbness appear in the treatment notes, [Plaintiff] also reportedly braids hair as a job. Seemingly, this requires a good degree of manual dexterity and flexibility, and contrasts with her assertions to examiners as to having numbness, pain and stiffness.

---

[4] Although not entirely clear, Plaintiff's testimony suggests that she underwent surgery on her right hand and was awaiting surgery on her left. (*See* AR 51-52.)

5

> \*\*\*
>
> The record shows that [Plaintiff] has bilateral carpal tunnel, which is addressed by limiting fine and gross manipulation to a frequent basis, and from [precluding] forceful gripping and grasping. Again, this should not be unduly problematic, based on [Plaintiff's] descriptions of her activities which include using the computer to go on the internet and braiding hair.

(AR 24, citing AR 470, 532.)

### C. Analysis

Plaintiff contends that the ALJ failed to properly consider the pertinent evidence in assessing her RFC. Specifically, Plaintiff points to the treatment notes from 2015 and 2016 diagnosing her with bilateral carpal tunnel syndrome and diabetic polyneuropathy; examinations revealing positive Tinel's and Phalen's signs, diminished bilateral hand grip and numbness in the bilateral 1-3 digits; and the March 2016 electromyogram and nerve conduction study which revealed severe bilateral median neuropathy at the wrist. (ECF No. 3 at 3, citing AR 526, 533, 555, 596, 601.) Plaintiff argues that in assessing her upper extremity limitations, the ALJ could not properly rely upon Dr. Gurvey's April 2014 findings because those findings predated the pertinent medical evidence regarding her upper extremity impairments discussed above. (ECF No. 3 at 4.) Furthermore, Plaintiff contends that the ALJ was obligated to develop the record by obtaining the assistance of a medical expert in light of the 2016 electromyogram and nerve conduction study, which showed "evidence of clear deterioration of Plaintiff's carpal tunnel syndrome." (ECF No. 3 at 4.) Although Plaintiff states it less than succinctly, the crux of the issue is whether the ALJ properly relied upon her own interpretation of the medical records regarding Plaintiff's upper extremity impairments in making an RFC determination or whether she had a duty to develop the record.

| 1 | An ALJ has a "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). This duty arises when the evidence in the record is ambiguous or is "inadequate to allow for a proper evaluation." *Mayes v. Massanari*, 276 F.3d 453, 459-460 (9th Cir. 2001); *see also* 20 C.F.R. § 404.1519a (a consultative examination should be purchased when additional evidence is needed which is not in the medical record; there is a conflict, inconsistency, ambiguity or insufficiency in the evidence which must be resolved; or when there is an indication that there is a change in a claimant's condition which is likely to affect their ability to work).

As set forth above, Dr. Gurvey diagnosed no upper extremity impairment and assessed no upper extremity functional limitations. Likewise, the State agency physicians found no severe impairment at all. Indeed, carpal tunnel syndrome was not mentioned by the State agency physicians, likely because the record contained no such diagnosis at the time they reviewed it. (*See* AR 60-69, 71-80.) In light of the finding that Plaintiff suffered from no severe impairment, the State agency physicians assessed no functional limitations. Furthermore, it does not appear that Plaintiff's treating physicians who diagnosed carpal tunnel syndrome indicated what functional limitations her impairment imposed. Thus, the record is devoid of any medical opinion regarding the functional limitations imposed by Plaintiff's carpal tunnel syndrome and/or neuropathy. As a result, the ALJ's determination concerning the severity of Plaintiff's upper extremity impairments and their resultant functional limitations was based solely upon her own interpretation of the clinical findings and treatment notes.

An ALJ, however, is "not qualified to interpret raw medical data in functional terms." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *see Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (ALJ should not make his "own exploration and assessment" as to a claimant's impairments); *Miller v. Astrue*, 695 F. Supp. 2d 1042,

1048 (C.D. Cal. 2010) (it is improper for the ALJ to act as the medical expert); *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (ALJ is not qualified to extrapolate functional limitations from raw medical data).

A recent decision from this District is instructive. In *Karen E. v. Berryhill*, 2019 WL 1405835, at *4 (C.D. Cal. Mar. 27, 2019), the record contained substantial evidence of carpal tunnel syndrome. The ALJ erred by failing to consider what limitations might be warranted as a result of the plaintiff's carpal tunnel syndrome. Moreover, the court observed that, "even if the ALJ had discussed the evidence of carpal tunnel syndrome, he would have had little basis to determine what functional limitations it warranted since there was no such evidence in the record." *Karen E.*, 2019 WL 1405835, at *4. Specifically, no physician reviewed records relating to the plaintiff's carpal tunnel syndrome, and none opined any limitations related to that impairment. "Thus, for the ALJ to assess functional limitations due to carpal tunnel syndrome on this record, he would have been forced to act as his own medical expert and translate the data himself, something he was not qualified to do." *Karen E.*, 2019 WL 1405835, at *4 (citing *Nguyen*, 172 F.3d at 35). The court concluded that, "[u]nder these circumstance[s], the ALJ had a duty to develop the record further, at a minimum by retaining a medical expert to evaluate the records of carpal tunnel syndrome, if not by ordering a consultative examination." *Karen E.*, 2019 WL 1405835, at *4 (citing *Mayes*, 276 F.3d at 459-460). The court remanded the matter, directing the ALJ to "develop the record further with respect to plaintiff's carpal tunnel syndrome, including by retaining a medical expert to review the entire record or by ordering a consultative examination." *Karen E.*, 2019 WL 1405835, at *5.

Here, the record includes no medical opinion regarding the functional limitations resulting from the severe upper extremity impairments found by the ALJ. Nor do the treatment notes include sufficient information suggesting a medical basis for Plaintiff's functional limitations. Thus, the ALJ should have retained an examining physician or medical expert to properly evaluate the evidence. *See Sonja*

*S.R. v. Berryhill*, 2018 WL 3460165, at *7 (C.D. Cal. July 16, 2018) (ALJ's RFC determination was not supported by substantial evidence where the plaintiff "developed several new impairments subsequent to the State Agency physicians' review and the ALJ's RFC determination was based on his own lay interpretation of that evidence"); *Rivera v. Berryhill*, 2017 WL 5054656, at *4-5 (C.D. Cal. Oct. 31, 2017) (ALJ erred by formulating an RFC based on his own interpretation of medical findings in MRI rather than on medical opinion).

The Commissioner argues that the ALJ was not required to develop the record because the medical evidence from 2015 and 2016 merely "confirmed" the diagnosis of carpal tunnel syndrome and failed to show that Plaintiff's condition "significantly progressed since the April 2014 examination." (ECF No. 24 at 5-6.) The Commissioner's argument depends upon an unsupported reading of the record.

In April 2014, Dr. Gurvey did not diagnose Plaintiff with carpal tunnel syndrome, but instead found Plaintiff's upper extremities essentially within normal limits and concluded that her hand pain had "no etiology." (AR 470.) The diagnoses of carpal tunnel syndrome are found in the medical records post-dating Dr. Gurvey's report. Moreover, the ALJ's 2017 determination that Plaintiff suffered from severe upper extremity impairments – specifically carpal tunnel syndrome and peripheral neuropathy – directly contradicts the 2014 conclusions of Dr. Gurvey (as well as the State agency physicians). In assigning little weight to the opinions of Dr. Gurvey and the State agency physicians, the ALJ explicitly recognized that those opinions were rendered without the benefit of subsequently-obtained relevant medical evidence. Thus, even the ALJ implicitly found the later medical evidence significantly affected the nature and severity of Plaintiff's impairments. Consequently, the Commissioner's argument is unpersuasive.

**2.     Inconsistency between DOT and VE testimony.**

Plaintiff also argues that the jobs identified by the VE are inconsistent with the ALJ's RFC. Having found above that remand is warranted, the Court declines to

address Plaintiff's remaining arguments. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

## REMEDY

Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (citations omitted). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. . . . If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Dominguez*, 808 F.3d at 407 (citation and internal quotation marks omitted).

Although the Court has found error as discussed above, the record on the whole is not fully developed, and factual issues remain outstanding. The issues concerning Plaintiff's alleged disability "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter v. Colvin*, 806 F.3d 487, 496 (9th Cir. 2015); *see also Treichler*, 775 F.3d at 1101 (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved") (citation omitted); *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (same where the record does not clearly demonstrate the claimant is disabled within the meaning of the Social Security Act).

///

///

Accordingly, the appropriate remedy is a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).[5]

IT IS THEREFORE ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this opinion.

DATED: 6/20/2019

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE

---

[5] It is not the Court's intent to limit the scope of the remand.